HUDLAND (UNITED STATES v.). See Case No. 15,411.

## Case No. 6,828.

### The HUDSON.

[Cited in The Henry Ewbank, Case No. 6,376. Nowhere reported; opinion not now accessible.]

## Case No. 6,829.

### The HUDSON.

[5 Ben. 206;[1] 14 Int. Rev. Rec. 36.]

District Court, S. D. New York. June, 1871.

COLLISION ON HUDSON RIVER—VESSEL AT ANCHOR IN FOG—FERRY TRACK.

1. A United States revenue steamer came to anchor so near the track of a ferry, that, when the tide was ebb, if the ferry-boats kept far enough down to avoid her, they risked falling below the ferry slip. The steamer was requested to move further up stream, but failed to do so. The next morning was foggy, and, shortly before daylight, ferry-boat, although carefully navigated, collided with the steamer, which had failed to ring a bell, or otherwise announce her position: Held, that the steamer was improperly anchored too near the ferry track.

2. The ferry-boats were not bound to cease their trips in the fog.

3. The steamer was also in fault in failing to give some audible signal of her position.

In admiralty.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

Henry E. Davies, Jr., and George S. Sedgwick, Asst. Dist. Attys., for the United States.

W. R. Beebe and Jos. C. Jackson, for claimants.

BLATCHFORD, District Judge. This is a libel filed by the United States to recover for the damages sustained by the revenue steamer Cuyahoga, owned by the United States, through two collisions which took place, on the morning of the 29th of September, 1863, shortly before daylight, between the Cuyahoga and the steam ferry-boat Hudson, in the Hudson river, near the Jersey City slip of the ferry from the foot of Montgomery street, Jersey City, to the foot of Desbrosses street, New York. The first collision took place while the ferry-boat was on a trip from New York to Jersey City. The Cuyahoga was lying anchored with her head to the north, the tide being ebb, and was struck on her starboard side, near her bow, and considerably damaged. On her next trip from Jersey City to New York, the ferry-boat struck a launch on the port side of the Cuyahoga, hanging at davits, and stove it in. There was a fog at the time.

It is claimed, on the part of the ferry-boat, that the Cuyahoga was lying in too close proximity to what was, on an ebb tide, the usual track or route of the ferry-boats from the Desbrosses street slip on the New York side to their slip at Jersey City, which is the most northerly one of the slips at the foot of Montgomery street, Jersey City. The evidence shows this to have been the fact. On an ebb tide, the boat which leaves Desbrosses street heads up against the tide and runs over pretty well to the New Jersey shore, and then drops down sideways with the tide and heads in to her slip. This makes her usual track on an ebb tide a much wider one than the width of a straight course between the two slips. If she does not pursue such course and have the free use of such track, she is carried below her slip at Jersey City, and fails to make it on the first attempt, and loses time. On the same morning on which these collisions took place, and in the same fog, and before these collisions, another ferry-boat, the Aresseoh, which was running from New York to Jersey City, on the Desbrosses street ferry, knowing that the Cuyahoga was at anchor where she was, kept so far down, in order to avoid her, as, with the ebb tide, to miss the slip at Jersey City and go below it; and the Aresseoh, on a trip to Jersey City after these collisions, on the same morning, and in the same fog, came very near colliding with the Cuyahoga, running within a few feet of her, and, in her course after that, on the same trip, the tide being ebb, dropped by her and then headed up for her slip, but missed it and went below it. These boats were entitled

to their usual track in the ebb tide, as much in the fog as when there was no fog. Those in charge of the Cuyahoga were bound to know what such usual track in the ebb tide was, and what the effect of the ebb tide was on the manoeuvres of the boats in reaching their slip at Jersey City. The Cuyahoga had anchored where she was the afternoon before, and had seen the boats passing to and fro. There were two boats, each of which passed her once in every twenty minutes. Not that these facts would justify the ferry-boats in reckless navigation in the fog, merely because such was their track in an ebb tide; for, they knew that the Cuyahoga was at anchor where she was. But, the existence of the facts referred to made it incumbent on the Cuyahoga to take all prudent measures to indicate where she was in the fog. Her general presence and her general position were known; but the fog prevented her being seen at any but a very short distance, and equally prevented a light on her being seen. Any sound from her could, however, be heard through the fog. There is some dispute as to the density of the fog; but it is clear it was so dense as to demand that the Cuyahoga should announce herself by audible sounds. The ferry-boat was blowing her steam-whistle, and her paddles, she being a side-wheel boat, made a loud noise. The morning was still and calm. A sound on the water could be heard a considerable distance—much further than vision could penetrate through the fog. The approach of the ferry-boat to the Cuyahoga was, therefore, indicated to the latter, and she should have responded by sounding a bell, or blowing a horn, or striking on an anchor-stock, or shouting with the voice, or making some other audible noise. She did nothing of the kind. So far from that, the conduct of those on board of her was, in this respect, very reckless and culpable. On the afternoon before the collisions, the Hudson communicated with her in passing, and requested her people to take her further up stream, as she was in the course of the Hudson. This was done by the direction of Mr. Woolsey, the superintendent of the ferry, after he had seen where the Cuyahoga was anchored. After the first collision, and before the Hudson moved away, her pilot asked the people on the Cuyahoga if they would not ring a bell or blow a whistle or ring a horn, so it could be told where she lay. In reply, he was requested to go to hell. After the second collision, and before the Hudson moved away, her pilot again asked the people on the Cuyahoga if they would not ring a bell or make some noise, so that he could tell where she lay. On the trip, before referred to, of the Aresseoh, to Jersey City, her pilot, in dropping his boat down with the ebb tide close by the starboard side of the Cuyahoga, hailed a man whom he saw about amidships on her deck, and told him that the

vessel lay in the course of the ferry-boat, and asked if he would not ring a bell, or make some noise, or drop down below the ferry slips. This was after the collisions with the Hudson, and while the fog continued. The reply was: "Bang away, damn you; I am as hard as you are; you have hit me twice now."

These facts show great fault on the part of the Cuyahoga, and fault which accounts largely for the collisions. If the Cuyahoga had indicated her position by making a proper noise, there can be no doubt that she would not have been hit. The ferry-boats were guided, during the fog, in reaching their slip at Jersey City, by a fog-bell, weighing nearly six hundred pounds, and having a peculiar sound, distinguishable from that of other bells, and which was constantly sounding on the pier adjoining such slip. This fault of the Cuyahoga modifies and regulates the responsibility of the ferry-boat. The latter was not bound to omit her trips altogether in the fog. She was bound to use proper precautions, by using less speed, and keeping a proper lookout, and feeling her way, and otherwise, in the fog, so as not to come into collision with another vessel using like proper precautions. The ferry-boat did use such precautions, and the evidence discloses no fault on her part. She was running under a slow bell, before sighting the Cuyahoga, at both collisions, employing no greater speed than was necessary to give her pilot proper control of her in the tide that was running. She had two lookouts, one stationed alongside of the pilot-house, on the promenade deck, as near the forward edge of that deck as possible, and the other at the extreme bow of the boat on the main deck. Her engineer was at his post, and stopped and reversed his engine promptly on getting the bells for that purpose. Those bells were rung by the pilot in the pilot-house the moment the Cuyahoga was reported. The lookout Coe, who was on the main-deck forward, reported her. He is not produced as a witness, but proof is made that an unsuccessful effort was made to find him. He had, at the time of the collisions, been on the ferries for two years. The fact that he was at the post mentioned is shown by the pilot and by the other lookout, and he reported to them that there was a vessel ahead, before they could see her from their position.

The position of the ferry-boat at the second collision, when she came in contact with the boat on the port side of the Cuyahoga, as that vessel lay tailing down the river, is sufficiently accounted for by the fact that, as the ferry-boat left her slip at Jersey City, she saw the lights of a Courtlandt street ferry-boat which was bound into the slip next adjoining below at Jersey City, and sheered up stream, against the ebb tide, by starboarding, so as to avoid being

borne down by the tide against the incoming boat. That sheer carried her, in the fog, to the port hand of the Cuyahoga.

The libel is dismissed.